## TRADERS & GENERAL INS. CO. v. RHODABARGER.

### No. 3298.

Court of Civil Appeals of Texas. El Paso. April 16, 1936.

Rehearing Denied April 30, 1936.

Lightfoot & Robertson and Nelson Scurlock, all of Fort Worth, and Will R. Saunders, of Amarillo, for plaintiff in error.

Hill D. Hudson, of Pecos, and J. B. Cotten and Fred H. Woodard, both of Crane, (Fred C. Knollenberg, of El Paso, of counsel), for defendant in error.

WALTHALL, Justice.

On former days of this term of this court we handed down opinions in this case. Since the filing of motions by both parties, we have concluded to withdraw the former opinions which we now do, and substitute therefor the following:

Defendant in error, Harry Rhodabarger, brought this suit in the district court of Ward county, Tex., against plaintiff in error, Traders & General Insurance Company, to set aside an award of the Industrial Accident Board, and to collect compensation insurance on account of personal injuries received by him about the 4th day of August, 1933, while in the employ, as alleged, of Garrett J. Donnelly, as his employer.

Plaintiff in error was the employer's surety under the Workmen's Compensation Law (Vernon's Ann.Civ.St. art. 8306 et seq.) at the time defendant in error's injuries were sustained.

Defendant in error alleged that by reason of his injuries he had been rendered totally and permanently disabled to perform manual labor, and that by reason of his said injuries he could not obtain and retain employment if given an opportunity to do so.

Defendant in error alleged that for more than 12 months prior to his injuries he had received the sum of $5 per day and that his compensation under the Employers' Liability Act was $17.30 per week for a period of 401 weeks or a total of $6,937.30, together with interest on all due and unpaid installments.

Defendant in error further alleged that if, by reason of the shortness of time of his employment, his average weekly wage could not be determined on the basis of his own average weekly wage, that the average wages of an employee of the same class, working substantially the whole of the immediately preceding year in the same employment in Ward county or neighboring counties, so employed, was $5 per day, or $28.84 per week; that in the event his compensation could not be determined on either of the bases stated, then his compensation rate be fixed in such manner as to the court seems just and fair alike to both parties; he further alleged that he had been represented in the presentation of his claim before the board and the trial court by an attorney and had contracted to pay him a fee equal to one-third of his recovery; he further asked that his compensation be allowed him in a lump sum.

Plaintiff in error answered by general demurrer and general denial and prayed that the award of the board be set aside and held for naught. The cause was tried to a jury and submitted upon special issues. At the conclusion of the evidence plaintiff presented its motion for an instructed verdict in its favor which the court overruled; all issues of fact submitted were found in favor of defendant in error and the court entered judgment on the verdict in favor of defendant in error for the sum of $5,561.34, with interest thereon from date of judgment. The court overruled plaintiff in error's motion for a new trial, and plaintiff in error perfected this appeal by writ of error.

## Opinion.

Plaintiff in error filed assignments of error and based thereon present sixteen propositions assigning error. We will consider the first two propositions together.

Dr. W. D. Black, a witness called to testify for defendant in error, after testifying to having examined defendant in error, was permitted to testify, over objection, that defendant in error was unable to do manual labor and that such condition was permanent.

We state briefly the evidence that seems to be pertinent to the question presented.

Dr. Black made two physical examinations of defendant in error, one on October 2, 1934, and one on February 17, 1935. In making the examination witness used X-ray pictures, and was asked to tell what abnormalities he found about Rhodabarger's spine, to which witness answered:

"I found the second, third and fourth vertebrae reflected to the right and out of position; the fifth seemed to be impacted, or more or less stuck together; the X-ray pictures bear that out, and there is some tenderness in the muscles coming down to the iliac region or hip joint, and I find a good deal of tenderness in the joint there."

Responding to a question, witness said from his examination of Rhodabarger he did not think he would be able to retain employment as a laborer doing labor; do not think he could, not hard manual labor; witness, to some degree, understood the nature of the work of an oil field worker called a "roughneck," and said that, in his opinion, Rhodabarger would not be able to work as a roughneck; said the condition he found in Rhodabarger was permanent; said Rhodabarger did not come to him for treatment, but for examination to enable witness to testify as to what his findings were; witness did not give him treatment; made a general physical examination; said there are two different kinds of symptoms, one objective and one subjective; the objective is what the doctors can tell without the aid of the patient, and the subjective is what the patient tells you and complains of, the history; Rhodabarger gave witness a full history of his case and how he got hurt; examined some X-ray pictures which he was told were pictures of Rhodabarger; witness' statements are based mostly on the objective symptoms; took the X-ray pictures, not altogether, but partly into consideration; with reference to the sciatic nerve, where he complains of the pain, witness had to take his word into considering the subjective symptoms; in making the examination and forming an opinion, witness took into consideration what Rhodabarger told witness he suffered and where he suffered pain; witness said his physical examination, the X-ray pictures, would determine the injury, and then the subjective symptoms he gave when he said he had pain and tenderness, witness had to take his word for that, but that would be a small part of it; he complained of pain in the sciatic nerve; he complained of pain in the back and the lumbar vertebræ, and witness took that into consideration, with the injury he had; he is totally and permanently disabled from doing any kind of manual labor.

Plaintiff in error moved to "exclude the testimony of the witness, Dr. Black, as to the disability that he says exists in the plaintiff, as a result of the examination for the reason that it is immaterial, irrelevant and appears to be based in part, if not in whole, upon hearsay testimony, and self-serving declarations."

 Defendant in error suggests that the motion is too general, and is not sufficiently specific to include Dr. Black's opinion as to Rhodabarger's ability to perform labor. We think the motion is sufficient to include any disability that the doctor found to exist that was based upon, or in part upon, improper evidence, that is, evidence that was hearsay or self-serving declarations. The evidence shows without question that defendant in error presented himself to Dr. Black for the sole purpose of having a physical examination made, in order to enable Dr. Black to qualify as a witness and testify in this case; that defendant in error was not treated for any injuries or illness by Dr. Black; that the examination made of the defendant in error by Dr. Black was more than a year after the injuries were received and the last of the two examinations was made the day before the trial of the case; that at the time the physical examination was made by Dr. Black the defendant in error related to Dr. Black a full history of his case; that the opinion of Dr. Black that defendant in error was unable to do manual labor and that such condition was permitted was based in part upon statements made to Dr. Black by defendant in error as to subjective symptoms of some of the injuries complained of at the time of the examination and trial. In making the examination, Dr. Black made use of an X-ray picture, its correctness and identity, as applying to defendant in error, which was not proved, and complained of in the proposition, but we think the use of the X-ray picture was not covered by the motion, and not having objected to the use of the X-ray, its use was waived. At any rate the motion was to "exclude the testimony" as hearsay and self-serving, and the X-ray picture was not testimony, but an instrumentality used in the examination to show the physical condition of the one examined.

The testimony of Dr. Black, given as an expert, as predicated in part upon the unsworn statement of the defendant in error at least as to the subjective symptoms of some of the injuries complained of as causing the ultimate fact of total and permanent disability. We have found no statement in the record as to what the opinion of the witness Dr. Black was as to the disability of defendant in error, based wholly upon the objective symptoms, or what he observed by his examination apart from and independent of anything defendant in error said to him. The injury primarily caused to defendant in error was an injured foot, ankle, leg, and back, such injuries except as to the back could plainly be seen were objective; the injury to the back the evidence shows was reflected by the X-ray picture, and the examination made. The evidence of Dr. Black shows that he made a thorough physical examination of defendant and states the abnormalities he discovered.

 The courts of this and other states have held that a physician's opinion that an injured employee was totally and permanently incapacitated to perform labor as a workman was inadmissible where such opinion was based partly upon hearsay and self-serving statements made to him by an unsworn employee, pertaining to the history of his case and to subjective symptoms as to his injuries.

Texas Employers' Ins. Ass'n v. Wallace (Tex.Civ.App.) 70 S.W.(2d) 832; Gaines v. Stewart (Tex.Civ.App.) 57 S.W.(2d) 207; Texas & N. O. R. Co. v. Stephens (Tex.Civ.App.) 198 S.W. 396; Wheeler v. Tyler S. E. Ry. Co., 91 Tex. 356, 43 S.W. 876; and Missouri, K. & T. Ry. Co. v. Johnson, 95 Tex. 409, 411, 67 S.W. 768, in which the Supreme Court discussed the question, but because of the condition of the record the question was not fully raised. Reid v. Yellow Cab Co., 131 Or. 27, 279 P. 635, 67 A.L.R. 10; 17 Tex.Jur. pars. 245 and 272. While the witness did not detail to the jury what the injured party said, it is clear that the opinion of the witness was based in part upon the subjective symptoms stated by the injured, and not res gestæ of the injury.

 The testimony of Dr. Black should not have been received.

 But the same character of testimony was heard from other physicians and was not objected to and for that reason the case is not reversed and remanded because of the improper admission of the evidence of Dr. Black. Maryland Casualty Co. v. Allen (Tex.Civ.App.) 22 S.W.(2d) 329, and cases there referred to.

 Error is assigned to the admission in evidence of the opinion of Dr. Fisher

because of the use made by him of an X-ray picture portraying the back of the defendant in error. The record does not show that objection was made to the use of the X-ray picture as not properly made and developed, but the objection was, as we view it, to the qualification of the witness. The witness was qualified. Objection was made to the testimony of the witness Hill D. Hudson. Defendant in error had not himself worked in the oil field 300 days prior to his injuries on August 4, 1933.' Witness was permitted to testify that he made an investigation of the wage scales of employees employed in Ward' county and in that vicinity who had worked 300 days in the same character of employment of defendant in error, and that he did not find any employee in that county or vicinity so employed who had worked for 300 days prior to August, the time stated, and that there was no such employee who had so worked; that in making such investigation witness had talked to contractors and employers of oil field labor, and employees, in an effort to find an employee who had so worked; had found some employers who had employed men through that year, but not one who had worked for 300 days. Witness had no such personal information himself.

Plaintiff in error moved to exclude the testimony of the witness as based in part, if not in whole, on hearsay evidence. The court overruled the motion.

Defendant in error testified that he was working for $5 per day. He pleaded his average daily wage was $5. The jury found that the amount of money to be just and fair to be fixed as the average weekly wage was $30 per week. The court entered judgment of $17.30 per week for 401 weeks, less the amount of $484.40 previously paid, leaving a balance of $5,561.34.

Article 8309, § 1, first par. 3, provides that the average weekly wages shall mean: "When by reason of the shortness of the time of the employment of the employee, or other employee engaged in the same class of work in the manner and for the length of time specified in the above subsections 1 and 2, or other good and sufficient reasons it is impracticable to compute the average weekly wages as above defined, it shall be computed by the board in any manner which may seem just and fair to both parties."

It seems to us that the facts of the case make the above provision of the statute applicable. The proposition presented, however, complains that in trying to establish the 300 days labor at $5 per day as the average daily wage, the evidence of witness Hill D. Hudson was based on hearsay evidence. Admit that to be true, witness Hudson had no personal knowledge of the matters about which he testified. In answer to the questions: "All that information is based on what these people told you?" he said: "Yes, sir, naturally." "You have no personal information about that yourself, because you are not engaged in that line of business?" to which witness answered: "That is right."

We have concluded that the admission of the witness' testimony was error. In Gulf, C. & Santa Fe Ry. Co. v. Jackson & Edwards, 99 Tex. 343, 89 S.W. 968, 970, defendant offered to prove the market value of cattle at a certain time and place. The Supreme Court said: "The defendant offered to prove by witness Gravitt that in May, 1902, something like a month after the shipment of these cattle from Lampasas, the witness was in the country near Lampasas from which the plaintiffs had purchased their cattle, and by inquiry of cattle raisers in that section of the country he learned what the value of cattle was in that vicinity in March and April, and that the price had not advanced from that time to the time when the witness was making the inquiry. The defendant then proposed to prove by the witness the values of cattle so ascertained, to which counsel for plaintiffs objected, because it was hearsay, and the court sustained the objection, in which we think there was no error."

The general rule seems to be that a witness cannot testify to facts where his knowledge thereof is derived from the unsworn statements of others. Many Texas cases, in addition to the above from which we have quoted, as supporting that rule, are referred to under paragraph 174, note 42, Volume 22, Corpus Juris, to which we refer without quoting them here.

There are many exceptions to the rule excluding hearsay evidence. They are based upon necessity, and upon the supposition that the circumstances under which the evidence offered were made afford a sufficient probability of their truth to admit their being received and considered by the jury. But no such necessity is made to appear. We think the rule as to hearsay applies. We have concluded that the error in not excluding from the jury the evidence of Hill D. Hudson is not reversible error under the Maryland Casualty Company v. Allen Case, supra, if the judgment can be

sustained on the theory that defendant was paid on a basis of $5 per day, or a compensation of $17.30 per week.

■ The trial court submitted to the jury the following: "What amount of money, if any, do you find from a preponderance of the evidence to be just and fair to be fixed as the average weekly wage of the plaintiff? Answer in the amount, if any."

Plaintiff in error objected to the submission of the issue as being a mixed question of law and fact, and as the submission of a question of law to the jury, and as being confusing and misleading to the jury, and therefore prejudicial.

The issue is submitted in the language of the statute, and we think is not subject to the objection made.

■ Plaintiff in error requested the court to submit an issue to find the number of days defendant in error had worked, and submitted a special issue submitting to the jury to find the number of days. The court refused to submit the issue.

Defendant in error had testified that he had not worked 300 days of the year immediately preceding his injury. He was the only witness who testified to the number of days he had worked.

There was no basis in the evidence upon which to submit the issue and there was no error in refusing to give the charge.

■ The court submitted to the jury to find whether plaintiff in error had issued to Garrett J. Donnelly, defendant in error's employer, its policy of compensation insurance in force at the time of the accident.

Plaintiff in error objected on the ground that the issue was one of law, and, if not, it was a mixed question of law and fact. The issue submitted, we think, was one of fact and not of law. · The issue, as submitted, did not involve the application or construction of the policy to any of the facts involved. The policy inquired about in New Amsterdam Casualty Co. v. Parham (Tex.Civ.App.) 2 S.W.(2d) 866, to which we are referred, was one "covering injuries to employees" in that case. The court in that case held the question to be one of law, but not calculated to prejudice appellant. The only witness who testified as to the issuance of such policy and whether it was in force at the time inquired about was defendant in error, and to the effect that weekly payments of compensation had been made to him by the plaintiff in error. The court could not construe the policy con-

tract until it was shown that such a contract was issued to Donnelly.

■ There was no error, under the evidence, in submitting to the jury the issue of the payment in a lump sum.

■ Without quoting the verbiage of his evidence, defendant in error testified that he drew compensation from August 7, 1933, to the 16th of February, 1934, from plaintiff in error, and that the checks given him amounted to $17.30 per week.

The defendant in error was the only witness who testified to these facts. The facts stated by the witness were not submitted to the jury. In entering judgment, the court computed the amount of such payments and deducted the aggregate amount paid from the judgment rendered. The facts stated were not controverted.

Plaintiff in error submits that the evidence raises an issue of a fact, and the testimony being wholly from an interested witness, the jury could disregard the testimony, though undisputed, and, without the jury's finding on the facts, the judgment is without support in the evidence.

There are other facts shown by the record, testified to only by the defendant in error, and which are uncontroverted, and which were not submitted to the jury. We will not discuss them severally.

In American Surety Co. v. Whitehead, 45 S.W.(2d) 958, 960, 961, Judge Leddy, for the Commission of Appeals, Section B, makes a clear statement of the rule. It is there said, it is the general rule that the testimony of an interested party to a suit, though not contradicted by any other witness, does no more than raise an issue of fact for the determination of the jury, and refers to Pope v. Beauchamp, 110 Tex. 271, 219 S.W. 447; Houston E. & W. T. Ry. Co. v. Runnels, 92 Tex. 305, 47 S.W. 971; Stone v. City of Wylie (Tex.Com.App.) 34 S.W.(2d) 842. Judge Leddy then says, "There are a number of decisions in this state, however, which seem to graft an exception upon this rule to the effect that, where the testimony of a party to a suit is not controverted by any other witness, or attendant circumstances, and the same is clear, direct, and positive, free from contradictions, inconsistencies, and circumstances tending to cast suspicion upon it, the court may direct a verdict thereon," and refers to Felts v. Bell County, 103 Tex. 616, 132 S.W. 123, and other cases.

This case clearly falls within the above described exceptions to this rule. Nothing

could be clearer, more direct, and positive, or freer from any circumstances tending to cast suspicion upon the fact stated, or easier to correct or deny, which was not done.

■ Defendant in error alleged that Garrett J. Donnelly was his employer. The notice on its face shows that Garrett J. Donnelly and Stanley J. Thompson were the subscribers under the act.

Plaintiff in error objected to the notice as evidence for the reason that the notice appeared to be signed by Donnelly not under oath, without the plaintiff in error's having the right to cross-examine him; that the same (notice) is immaterial and irrelevant, was hearsay. Defendant in error testified that at the time of his injury he was working for Donnelly and under the orders of Donnelly. The evidence shows that plaintiff in error paid defendant in error $17.30 a week for several weeks as compensation for the injury in question.

Plaintiff in error submits that the notice was insufficient to show coverage, that there was variance. The policy is not found in the record.

In New Amsterdam Casualty Co. v. Harrington (Tex.Com.App.) 290 S.W. 726, Harrington alleged that Dr. L. F. Gragg was his employer and the subscriber under the policy issued by the casualty company. The evidence in that case showed that a copartnership, composed of Gragg and others, was the employer, and that Harrington was engaged by Gragg to work for the copartnership. In that case Judge Bishop, for the Commission of Appeals, says, that though the evidence, by reason of the notice, may show that the company by the issuance of the policy intended to provide for the payment of compensation to the employees of the copartnership, and that the policy was issued in the name of Gragg for the use and benefit of the copartnership and its employees, thereby in law making the copartnership the holder of the policy; there were no pleadings based on the facts to support the cause of action. That a copartnership is a legal entity distinct from the individual members composing it.

The evidence in this case is to the effect only that Donnelly employed Rhodabarger. There is no evidence here of a copartnership, or that the policy was issued in the name of Donnelly for the use of Donnelly and Thompson as a copartnership, or that the policy was so intended. If we are to infer that Donnelly and Thompson were the employers of Rhodabarger, it would be by reason solely of the notice and that the employers so continued to the time of the injury. However, in the absence of any proof to the contrary, we must assume for the purpose of the point presented that the subscribers, as in the notice, were the employers of defendant in error, and not Donnelly alone.

The evidence, however, shows without dispute that plaintiff in error, acting on the claim of defendant in error, paid to Rhodabarger, for a number of weeks, on account of his injuries, $17.30 as his weekly compensation, and for which the court in the judgment gave it credit.

We hold, under the authorities, that plaintiff in error, having acquiesced in Rhodabarger's claim as stated, cannot now deny its liability under the policy.

Other points presented become unimportant.

The San Antonio Court in Georgia Casualty Co. v. Ginn (Tex.Civ.App.) 272 S.W. 601, 602, says: "Under the facts in this case, showing the conduct of appellant in making these partial payments and its acquiescence, it does not lie in the mouth of appellant to now deny the issuance of this policy."

In Independence Indemnity Co. v. Polk (Tex.Civ.App.) 14 S.W.(2d) 330, where the insurance company had made payment in compensation to the injured employee under the Workmen's Compensation Law, the court quoted from the Ginn Case, supra, with approval and held as in that case. In Texas Employers' Ins. Association v. Beckworth (Tex.Civ.App.) 42 S.W.(2d) 827, the Amarillo court said that the insurance company having acted on the claim of the injured employee, and acquiesced to the extent of making payments, it cannot now deny that it issued such policy. Without quoting therefrom, we refer to the following as making similar holdings: Fidelity & Casualty Co. of New York v. Branton (Tex.Civ.App.) 70 S.W.(2d) 780, 784; Texas Employers' Ins. Ass'n v. Trotter (Tex.Civ.App.) 54 S.W.(2d) 1023; Utilities Indemnity Exchange v. Burks (Tex. Civ.App.) 7 S.W.(2d) 1112, 1115; Bankers' Lloyds v. Seymour (Tex.Civ.App.) 49 S.W.(2d) 508, 509.

We have considered all of the points presented and they are overruled.

Finding no reversible error, the case is affirmed.