**INDUSTRIAL LLOYDS et al. v. DENUM.**

No. 3986.

Court of Civil Appeals of Texas. Beaumont.
April 1, 1942.

Rehearing Denied April 15, 1942.

K. W. Denman, Jr., and Mantooth & Denman, all of Lufkin, for appellants.

Musslewhite & Fenley, of Lufkin, for appellee.

WALKER, Chief Justice.

This is a workman's compensation case, with appellee, Grover James Denum, the employee, Lufkin Foundry & Machine Company, the employer, and on allegations of appellee's petition, appellants, Industrial Lloyds, Industrial Underwriters, a copartnership composed of Temple H. Morrow and Edward C. Hilman, attorney-in-fact for Industrial Lloyds, and Industrial Insurance Company, the compensation insurance carriers. On trial to a jury, judgment was for appellee against appellants, jointly and severally, for compensation as for total, permanent incapacity, for 401 weeks at the rate of $10.08 per week, to be paid in the lump sum of $3,356.98, with interest from the 11th day of August, 1941, at the rate of six per cent per annum, and with costs, from which appellants have regularly prosecuted their appeal. Our workmen's compensation law, Sec. 1 of Art. 8309, R.C.S.1925, Vernon's Ann.Civ.St. Art. 8309, § 1—see Texas Employers Ins. Ass'n v. Clack, 134 Tex. 151, 132 S.W.2d 399, where Sec. 1 of Art. 8309 is set out in full—provides three methods for computing the average weekly wage of the employee. The jury found that appellee's average weekly wage could not be computed under subsections 1 and 2 of Sec.

1 of Art. 8309. Subsection 3 was sent to the jury by the following question, answered $16.80 per week:

"Special Issue No. 17.

"What sum of money, if any, do you find from a preponderance of the evidence would represent an average weekly wage of Grover James Denum in the same or a similar class of employment as that in which he was engaged on January 20, 1941, if any, which would under the evidence before you, be just and fair both to the Plaintiff and to the Defendant?"

The court calculated appellee's average weekly wage on the basis of the jury's answer to special issue No. 17.

Appellants make the point that, on the undisputed evidence, appellee's average weekly wage must be computed under subsection 2. As we understand their brief, this point rests primarily on the testimony of Mr. W. D. Winston, the secretary and treasurer of Lufkin Foundry & Machine Company; they bring forward the testimony of other witnesses, but such testimony is not contended by them to be controlling. Mr. Winston testified as follows on this point (Q. & A. reduced to narrative):

"Mr. O. B. Barrington is one of the employees of Lufkin Foundry and Machine Company, and works as a helper. He worked mostly up here before January 1940; I could not tell unless you go by the date. He was working at the Trailer Plant as a helper. I wouldn't be the judge of whether he was doing the same kind of work Grover Denum was doing, at the time Grover was injured; I don't know. I don't know what he was doing all the time. I wouldn't attempt to tell the jury that O. B. Barrington was in the same class as Grover Denum. I wouldn't tell the jury that he was engaged in the same or similar employment that Grover Denum was engaged in, unless I looked up the record; I wouldn't say that now. I don't know any other employee of Grover Denum's class who did work in that employment, or similar employment, 300 days, or close to 300 days, during the year immediately before January 1941; but I am sure we had some working; I can't tell you offhand who they were. You went to my office several days ago and asked me about them; I worked this up afterwards; that was day before yesterday. You asked me whether we had such an employee, and I said I was afraid not, because they did

not work regularly enough. I don't know how many they brought from the old plant, but they brought every man from the old plant. They never laid anybody off. I understood you to say they went to work the year before; some of them had been working ten years; this is the only one that went to work in September after we took it over. I could not say that he—Mr. Barrington—was doing the same class of work that Mr. Denum was doing; they have different classes of helpers. (This witness then gave the number of days that Mr. Barrington worked each month from January 1940 to January 1941). Counting up the days that Mr. Barrington worked—I count them—it will be 278 days. (This witness then gave the total earnings of Mr. Barrington for the year immediately preceding appellee's injury in the sum of $852.05, and on the data before him testified that the average daily wage of Mr. Barrington during that time, on the basis of 276 working days, was 'a little over $3.08').

"Q. His daily average wage was $3.08? A. No. The condition was different here in the new plant.

"Q. He wasn't the same class employee as Grover Denum? A. He was the same over there.

"Q. If he were in the same class and engaged in the same or similar employment as Grover Denum and had worked substantially the whole of the year two hundred and seventy-six days during the time he was employed, according to your own figures, his average daily wage was $3.08? A. We have a better set up. It wouldn't be as it is now.

"Q. During those days that he was employed at the plant during the year immediately preceding January 20, 1941, O. B. Barrington's average daily wage, according to your figures, was $3.08? A. Yes, on that basis, $3.08."

It seems to us clear that Mr. Winston's testimony did not, as a matter of law, restrict appellee to subsection 2 as the basis for calculating his average weekly wage. In the first place, he testified that Mr. Barrington was not in the same class of employment with appellee, and again that Mr. Barrington worked only 278 days during the year immediately preceding appellee's injury. It can not be said as a matter of law that 278 days amounts to "substantially the whole of such immediately preceding year," against the affirma-

tive requirement of this section that the employee's average annual wage shall consist of 300 times the average daily wage.

Appellants also contend that the jury's answer of $16.80 per week to question No. 17, as being just and fair to both parties, is without support in the evidence. This contention is denied. Appellee was permitted to work five days per week, eight hours per day; certain employees of his class drew 35 cents per hour, and others with more skill drew 40 cents per hour. Appellee's employer was under the provisions of the Federal Wage and Hour Law, 29 U.S.C.A. § 201 et seq.; this law does not limit the number of hours or days of work of an employee, but does provide for payment of over time when he works more than 40 hours per week. Therefore, appellants' contention that appellee's compensation rate under subsection 3 must be computed on the basis of five days per week, and 8 hours per day, is without support in the law. This proposition is ruled by Maryland Cas. Co. v. Drummond, Tex. Civ.App., 114 S.W.2d 356; Texas Employers Ins. Ass'n v. Clack, 134 Tex. 151, 132 S.W.2d 399. On appellants' calculation, they say as a matter of law that appellee's average weekly wage was $14; they say further that the greatest wage he could have possibly earned, under any circumstance, was $15 per week. During the 52 weeks of the year immediately preceding appellee's injury, his employer could have given him employment on his daily wage for not more than 260 days. On the testimony of Mr. Winston, Mr. Barrington worked under the five day week, and eight hours per day rule; yet during the year immediately preceding appellee's injury, Mr. Barrington worked 278 days. On this testimony, the jury had the right to conclude that appellee, under his employment, had the reasonable expectation of working over time, and in fixing a wage just and fair to both parties, of course, it was the province of the jury to estimate appellee's overtime. Appellants make no point that the jury abused its discretion by adding overtime to the five days per week and eight hours per day, in a sufficient amount to total $16.80 per week. Again, appellee's wage was 35 cents per hour, $2.80 per day; the daily wage multiplied by 300 would give his annual wage at $840, which divided by fifty-two would give his average weekly wage at $16.15, approximately the sum found by the jury.

If we are in error in our conclusion that appellee's average weekly wage was properly fixed by the jury under subsection 3, and if appellants are correct in their contention that his average weekly wage should have been fixed under subsection 2, based on the wages of Barrington, then it follows on the undisputed testimony that appellants have not been injured by the judgment of the court. Mr. Barrington, during the year preceding appellee's injury, earned $864.05. If he worked, on appellee's contention, 279 days, his average weekly wage was $21.80. These figures are the result of dividing his year's earnings by the number of days he worked for his daily wage, multiplying his daily wage by 300 for his annual wage under subsection 2, and by dividing his annual wage by fifty-two, under the provisions of subsection 5, which provides that the average weekly wage shall be one-fifty-second part of the average annual wage. It thus appears on this calculation that appellants were not injured by the verdict of the jury. The following authorities support this conclusion. Lawler's Texas Workmen's Compensation Law, 312; Fidelity Union Cas. Co. v. Carey, Tex. Com.App., 55 S.W.2d 795; Federal Underwriters Exchange v. Guest, Tex.Civ.App., 129 S.W.2d 708.

The judgment in appellee's favor ran against appellants, jointly and severally. They make the point that there was no evidence showing any liability on the part of Industrial Lloyds, nor on the part of Industrial Underwriters, nor on the part of Industrial Insurance Company. This contention is denied. Appellee alleged in his petition that appellants were the compensation insurance carriers of his employer on the date of his injury, and he introduced in evidence the notice of the subscriber filed with Industrial Accident Board, and the reinsurance contract among appellants showing that they were the employer's insurers. Appellants did not deny under oath appellee's allegations on this point, nor did they introduce any controverting evidence. Appellee's pleadings and evidence constituted prima facie proof of his cause of action against appellants. Art. 8309, Sec. 5.

The judgment of the lower court should be affirmed, and it is accordingly so ordered.

Affirmed.