### DIXON et al. v. TEXAS & P. RY. CO.
### No. 14400.

Court of Civil Appeals of Texas.
Fort Worth.

June 26, 1942.

Rehearing Denied Sept. 11, 1942.

.Clark, Craik, Burns & Weddell, of Fort Worth, for appellants.

Shropshire & Bankhead, of Weatherford, for appellee.

McDONALD, Chief Justice.

William Dixon lost his life in a collision between his automobile and a train at a railroad crossing. This suit was brought by his two children and his mother, alleged to be his only heirs and next of kin. The trial court instructed a verdict in favor of the railway company. The two children, one of whom is a minor suing through his next friend, have appealed. The mother of the deceased has not joined in the appeal.

Appellants rely upon two points for reversal, under which they present four propositions. While propositions are not required under the present rules of procedure, it will be convenient to discuss the case under the four propositions asserted.

Under the first proposition it is argued that the pleadings and proof are sufficient to make a jury issue of the question of whether the operator of the train failed to ring the bell on the engine in compliance with Art. 6371, R.C.S., Vernon's Ann.Civ. St. Art. 6371, and Art. 1672 of the Penal Code, Vernon's Ann.P.C. Art. 1672 which

require that the bell be rung at a distance of eighty rods from the crossing, and be kept ringing until the train crosses the public road.

■ The proof is insufficient to make a jury issue. Two of the plaintiffs' witnesses, Mr. and Mrs. Bradley, were asked if the bell was rung, and both answered to the effect that if the bell was rung they did not recall it.

■ It is true that negative testimony that a person did not hear or see a particular incident may be admissible under proper circumstances as evidence that the event did not occur. 17 Tex.Jur. 906; Paris & G. N. Ry. Co. v. Lackey, Tex.Civ.App., 171 S.W. 540; Northern Texas Traction Co. v. Smith, Tex.Civ.App., 223 S.W. 1013; Payne v. Roberts, Tex.Civ.App., 249 S.W. 528, writ of error dismissed. But in cases like those cited where the courts have considered testimony of witnesses to the effect that they did not hear a bell ring, or a warning given, it was shown that the witness was in position to hear, and would likely have heard if the bell had been rung. But in the present case Mr. and Mrs. Bradley simply said that if the bell was rung they did not recall it. We do not consider their testimony as evidence of anything. The only other witness questioned about the ringing of the bell was Henry Chapman. He testified that he did not recall whether the bell was ringing, further saying, "It could have been ringing the bell".

■ There being no testimony, even negative testimony meeting the necessary tests, to show that the bell was not ringing, the mere failure of the train crew to testify concerning the matter cannot supply the entire lack of proof of noncompliance with the statute. The burden was upon plaintiffs to prove their case.

By their second proposition appellants contend that the pleadings and proof are sufficient to show failure of the operators of the train to keep a proper lookout. None of the train crew testified. Appellants argue that certain circumstances constitute evidence of failure to keep a lookout. It is argued that the train travelled a distance of more than a thousand yards without the whistle being blown; that the whistle was first blown when the train was approximately 1,500 or 2,000 yards from the crossing, and that the whistle was not blown again until the train was about 100 yards from the crossing; that the operators of the train had a clear view of the crossing for a distance of 1,000 yards; and that the facts that the train travelled a distance of more than 1,000 yards without the whistle being blown and that the train did not slow down before the collision are circumstances from which it could reasonably be inferred that the operators of the train were not keeping a proper lookout during that time.

We do not agree with appellants in their interpretation of the testimony. Their witness Bradley testified that the whistle was blown when the train was 400 or 500 yards from the crossing, and again when the train was about 100 feet from the crossing. Mrs. Bradley heard the train whistle twice, the second time when it was close to the crossing. She did not know how far away it was when it whistled the first time. Henry Chapman, the only other witness who testified concerning the manner of the collision, heard the whistle, but was not asked how far the train was from the crossing when it whistled. No witness gave any direct testimony concerning lookout by the train operators.

■ To us it appears that there simply is no evidence, circumstantial or otherwise, showing that the train operators failed to keep a lookout. As we have said, the burden was upon the plaintiffs to prove their case. As the train was approaching the crossing, the deceased was driving along a road which ran parallel with and close to the railroad track. He was riding in his Model A Ford, with the windows closed, it being a cool day in December. Both he and the train were proceeding in the same direction, east. Both were approaching an intersecting road, which ran north and south. When the deceased reached the intersecting road, he turned north, and had almost crossed the railroad track when the train struck his car. Had the train operators observed the car travelling along ahead of them, they would not necessarily have concluded that the driver of the car would turn directly into the path of the passing train. The facts, therefore, that the train operators blew the whistle at four or five hundred yards from the crossing, and again at one hundred feet from the crossing, and that the train did not appear to slow down, do not constitute evidence of negligent failure to keep a lookout proximately causing the collision.

In their third proposition appellants argue that there is sufficient evidence to show that the train was being operated at a negligent rate of speed, and that such negligence was a proximate cause of the collision.

Plaintiffs' petition alleges that the train was being operated at a speed of approximately seventy miles per hour, that the operation of the train at such rate of speed was negligence, and that "it was negligence upon the part of the defendant to operate said train at the rate of speed at which the same was operated when it struck the deceased". Plaintiffs' witnesses Bradley and Chapman were the only witnesses who testified concerning the speed of the train. Bradley testified that it was travelling at forty or forty-five miles per hour. Chapman said, when asked about the speed of the train: "Oh, I don't know. I don't know how to judge those trains speeds; it was going fifty or sixty miles, maybe, I don't know."

We think Chapman clearly admitted that he did not know how fast the train was going, and that his estimate of fifty or sixty miles was no more than a mere guess on his part.

In the first place, we doubt if the pleading is sufficient to support a claim of negligent operation of the train at a speed of forty or forty-five miles per hour. In the second place, we find nothing in the evidence which would support a finding by the jury that operating at forty or forty-five miles per hour would have been negligence, or that operating at such speed was a proximate cause of the collision. Plaintiffs advance the argument that if the train had been going a little slower, the deceased's car would have got on across the track before the train hit it. It might with equal logic be argued that if the deceased had been driving a little faster he would have got across the track before the train hit him.

The fourth proposition is to the effect that the evidence does not show the deceased to have been guilty of contributory negligence as a matter of law.

The conclusions already announced, if correct, are sufficient to dispose of the appeal, in that there is no proof which would have warranted submission to the jury of the three grounds of liability claimed in appellants' brief to have existed.

It is not easy, if it is possible, to distinguish the facts in many railroad cases in which it has been held that the question of contributory negligence of the plaintiff should have been submitted to the jury, from the facts in other cases in which it has been held that the evidence showed as a matter of law that the plaintiff was guilty of contributory negligence. Appellants rely upon such cases as Missouri, K. & T. Ry. Co. v. Luten, Tex.Com.App., 228 S.W. 159; Wells Fargo & Co. v. Benjamin, Tex.Civ.App., 165 S.W. 120, affirmed by Supreme Court in 107 Tex. 331, 179 S.W. 513; Gulf, C. & S. F. Ry. Co. v. Shieder, 88 Tex. 152, 30 S.W. 902, 28 L.R.A. 538; Rio Grande, E. P. & S. F. Ry. Co. v. Dupree, Tex.Com.App., 55 S.W.2d 522, 523. Appellee relies upon such cases as Galveston, H. & S. A. Ry. Co. v. Price, Tex.Com.App., 240 S.W. 524; Kypfer v. Texas & P. Ry. Co., Tex.Civ.App., 88 S.W.2d 528, writ of error dismissed; Wichita Valley Ry. Co. v. Fite, Tex.Civ. App., 78 S.W.2d 714; Wichita Falls & S. R. Co. v. Hesson, Tex.Civ.App., 151 S.W. 2d 270, writ dismissed; Cross v. Wichita Falls & S. R. Co., Tex.Civ.App., 140 S.W. 2d 567.

As is said in Barron v. Houston E. & W. T. Ry. Co., Tex.Com.App., 249 S.W. 825, 828: "It is obviously true that each case of this kind must stand upon its own peculiar facts."

In the same opinion it is also said: "The proper test in this case is whether or not, under all the facts and circumstances, a reasonably prudent person in Barron's situation would have done substantially as he did. If reasonable minds may differ as to whether or not Barron did exercise ordinary care, the question of contributory negligence is properly one for the jury."

The difficulty is not in stating a rule of law, as is clearly done in the sentence last quoted, but in applying the rule to the facts of a given case.

It is undisputed that the deceased lived near the railroad crossing where he lost his life, that he had crossed the railroad there many times, and that he was familiar with the conditions at and near the crossing. Included in the statement of facts are four photographs, which are described by plaintiffs' witness as being true pictures of the crossing and the area nearby. It is undisputed, as we view the testimony of the witnesses, and as is shown

in such photographs, that the deceased had a clear view of the railroad, as he approached and went upon the crossing, and that a train travelling east could easily have been seen by one in the position of the deceased from the time the train came within 1000 yards of the crossing. The only conclusion we can reach is that the deceased went upon the crossing without exercising any care for his own safety. There are no circumstances shown which would excuse him from seeing the train; he knew of the crossing; he drove upon it without materially decreasing the speed of his car, and apparently he exercised no precaution for his own safety. The deceased must have known that a train could not be stopped during the brief time it would take him to turn the corner and drive upon the track. To us the cause of the tragedy is obvious. The deceased was driving east, with the train approaching from his rear. As he turned onto the crossing he simply did not look for a train.

The judgment of the trial court is affirmed.