**TEXAS EMPLOYERS' INS. ASS'N
v. LOCKE**

No. 15074.

Court of Civil Appeals of Texas.
Fort Worth.

Oct. 28, 1949.

Rehearing Denied Dec. 2, 1949.

756

Nelson, Montgomery & Robertson and Lee Sellers, all of Wichita Falls, for appellant.

Caldwell, Baker & Jordan and W. B. Patterson, Jr., all of Dallas, for appellee.

SPEER, Justice.

This is a workmen's compensation case. Tom Locke, an employee of Ball Bros. Glass Company, who was the employer, sued Texas Employers' Insurance Association as insurance carrier for the Glass Company to recover for an accidental injury sustained while in the course of his employment.

Unless otherwise designated, we will refer to the parties as "employee" or "claimant," "employer," and "carrier."

At a jury trial on special issues, the employee recovered judgment and carrier

has appealed, assigning nine points of error.

First point complains because the court overruled the first application for a continuance based upon the absence of Dr. Ledbetter, whose testimony carrier expected to use. Carrier is very insistent upon this point, having devoted much of its brief to it.

The motion embraced all the requisites prescribed by Rule 252, Texas Rules of Civil Procedure, except the alleged diligence used to procure the attendance of the witness does not present the statutory means of procuring attendance of witnesses.

Rule 252, T.R.C.P., is in the precise language of Article 2168, R.C.S., and will be given the same construction.

The trial court heard evidence on the motion, in the absence of the jury. This suit was filed on November 26, 1948. Counsel for carrier testified in substance that late in December, with knowledge of counsel for all parties, the case was set for trial by the court on Monday, February 28, 1949. That carrier's counsel at all times expected to use Dr. Ledbetter as a witness; that counsel did not then, nor at any time prior to February 28, advise Dr. Ledbetter personally the date on which the case was set, nor did he request the doctor to attend court on the date set, nor did Dr. Ledbetter ever promise to attend and testify; that it was the custom and practice of carrier's counsel to talk to doctors when he expected to use them in such cases and to let their "offices know when the cases are going to be set." That on Friday before February 28, counsel called Dr. Ledbetter's office on the telephone and could not reach the doctor and on the following Saturday afternoon counsel went to Dr. Ledbetter's office and left word that the case would be reached the next week and that he wanted Dr. Ledbetter to attend and testify; counsel was then advised that Dr. Ledbetter had already gone or would go on Monday, February 28, to Galveston to attend a medical meeting; that no further effort was made to contact Dr. Ledbetter. The application shows the materiality of Dr. Ledbetter's testimony.

An application for continuance which complies substantially with the statutory form, except as to stating necessary diligence, does not necessarily require the court to sustain it. Empire Gas & Fuel Co. v. Muegge, Tex.Civ.App., 116 S.W.2d 758, reversed on other grounds 135 Tex. 520, 143 S.W.2d 763.

"Statutory" diligence to procure the testimony of a witness is the issuance and service of a subpoena in a sufficiently reasonable time before trial to enable the witness to appear, Rule 176, T.R.C.P. or by taking depositions under some circumstances. Rule 186, T.R.C.P.; 9 Tex.Jur., p. 699, sec. 37; Ibid, p. 703, sec. 39. "If other means than those which the law requires when practicable for the securing of testimony are elected to be employed by a party, he does so at his peril. In general, the omission will be fatal to his application." Ibid, p. 698, sec. 36. In such instances as that first above mentioned, and applicant attempts to excuse his failure to use statutory means, the application is addressed to the judicial discretion of the trial court and unless there has been a clear abuse of that discretion the judgment will not be reversed. Ibid, p. 694, sec. 35.

There are many cases decided since the date of Texas Jurisprudence above cited, but we think the rule so well settled that we need not name all of such cases here.

In the instant case the carrier did not use statutory means of procuring the attendance of Dr. Ledbetter but relied upon another plan as above outlined. The trial court in his discretion overruled the motion. It is quite obvious that at no time between the latter part of December and the last day of February following did counsel contact or advise the witness of the setting, nor did he attempt to do so until Friday and Saturday before the case was set for trial on the following Monday, February 28.

Carrier (appellant) cites and relies upon such cases as Haley Fisheries, Inc. v. Payne, Tex.Civ.App., 48 S.W.2d 437; United Employers Casualty Co. v. McCloud, Tex.Civ.App., 146 S.W.2d 247; and Central and Montgomery Railroad Company v. Henning, 52 Tex. 466.

In each of the first two cited cases the witness resided in the city where trial was to be had, was notified of the setting and had promised to attend and testify. The last cited case involved an application for continuance on the ground of surprise when plaintiff dismissed as to a defendant (he not being present), whom the remaining defendant needed as a witness. None of these facts are involved in the instant case.

In exercising his judicial discretion, the trial court knew when the setting was made in the latter part of December and the length of time elapsing before February 28 following; that the employee was represented by out-of-county counsel who do not appear to have known that carrier expected to use Dr. Ledbetter, who had not been subpoenaed.

The trial court also knew the condition of his docket and the setting of cases thereon; he could control all such settings so as to best conform to the orderly dispatch of business. These things may have prompted him to overrule the motion. There is no abuse of discretion presented by this record and the point is overruled.

The manner in which plaintiff's (employee's) average weekly wage rate was arrived at and the testimony supporting the issues thereon are involved here. In this respect Article 8309, R.C.S., and amendments thereto and subsections 1, 2 and 3 of section 1 Vernon's Ann.Civ.St. art. 8309 and § 1, subds. 1–3, furnish the rule by which such matters are governed. In so far as is pertinent here subsection 1, supra, provides for the average weekly wage to be ascertained from the average weekly wage of the employee for a year preceding the date of the injury, if he has worked substantially the full year. By subsection 2, if he did not work at the same or similar employment for substantially the whole of the preceding year, then the wage is computed upon the basis of the average weekly wage of any other person who did work at the same or similar employment in that or a neighboring place for substantially all of the preceding year; and by subsection 3, if neither of the conditions of subsections 1 and 2 exist, then the average weekly wage rate is to be computed "in any manner which may seem just and fair to both parties."

The rule is too well established in this state to require citation of authorities that the burden of proof is upon the employee to establish his average wage rate by one of the three means provided in the foregoing subsections and in the order named, that is, he must show it cannot be computed under the first subsection before he can resort to the second, and then if it cannot be computed by either subsection 1 or 2, he may resort to No. 3. The employee plead his average weekly wage rate alternatively in the order named.

By special issues 13, 15 and 17 the facts relating to the subsections were submitted to the jury and the effect of the answers was that the rate could not be computed under either subsection 1 or 2 and the rate was computed under subsection 3.

The carrier groups his points of error 2 to 8 since they all relate to the insufficiency of the testimony tending to support the findings on subsections 1 and 2 and because such testimony as was offered was admitted over its objections based upon the grounds that it was hearsay and conclusions of persons incompetent to testify in the matters inquired about.

One point in the group asserts error because the court refused to give its requested summary instruction because the employee had not discharged his burden of proof. We shall not attempt to give in detail the testimony but will make brief references to it. As affecting subsection 1 and the jury's answer to special issue 13, the employee testified that he worked during the preceding year before his injury at so much per hour and that the days he worked during the respective weeks varied and that as he figured it all up he worked about 255 or 265 days of 8 hours each during the preceding year. There was no testimony offered by defendant tending to show he had worked more days than he had estimated. In fact the carrier did offer in evidence the work sheet kept by the employer's bookkeeper, which sheet itemized the hours worked each day, the

rate paid, the days worked and total amount received by the employee each week that he worked, which sheet showed he had worked 238 days during the preceding year. This was abundantly sufficient to support the jury's findings in response to special issue 13, if indeed it was not sufficient to establish it as a fact without the jury's determination. It will be noted that the carrier made no serious effort to disprove the truth of the employee's testimony as to the number of days he had worked during the preceding year, but upon the other hand proved by the employer's records that he had worked fewer days than he himself had testified to. It is well settled that if the time shown does not amount to "substantially" 300 days, subsection 1 does not control. Industrial Lloyds v. Denum, Tex. Civ.App., 160 S.W.2d 966, writ refused. In such circumstances only slight evidence is sufficient to make a prima facie case and will support the jury's finding thereon. Employers' Liability Assur. Corp., Ltd., v. Manning, Tex.Civ.App., 188 S.W.2d 268, error refused, W. M.; Industrial Lloyds v. Denum, supra.

We now come to a consideration of whether or not there was sufficient competent testimony to support the jury's finding that there was no other person engaged in similar employment to that of claimant, in that or a neighboring area, who had worked substantially the whole year preceding the date of claimant's injury. The substance of the testimony was that claimant and other witnesses knew there was no other concern in Wichita County nor in any adjoining county whose employees did the kind of work being performed by this employee; that one other man who worked on another shift did similar work to that of claimant, but that he worked the same length of time as did claimant during the preceding year. Other witnesses said they had made investigation of such matters and upon information obtained they based some parts of their testimony as to how much time other employees worked. On cross examination they admitted the inquiries were made of a limited number of people; in some instances to only one person. Others based their testimony on the fact that there was no other industry in that or neighboring areas like that of the employer's; other witnesses worked in the same department with claimant; one kept the record of time worked by employees in the department; the keeper of that record was not asked by carrier as to the time any other employee worked.

In the very nature of things, this issue involved proving a negative as a fact and such proof has been the subject of much consideration by the courts. The quantum, source of information and weight to be given such testimony cannot be stated with definite certainty. Generally, if a witness shows to have been in a position to know a fact and says in effect that he did not see or hear it, or that it did not happen in so far as he knows, such testimony has probative value, more especially when no effort is made by the opposing party to prove the contrary. Dixon v. Texas & P. R. Co., Tex.Civ.App., 164 S.W.2d 252, writ refused, W. M.

A negative usually admits of no more than approximate proof. It may be prima facie established by proving some affirmative fact (like as in this case that there was no other industry in that area whose employees did similar work), which proven facts are "inconsistent with the affirmative of the proposition to be negatived, and therefore raising a presumption that the negative is true." 32 C.J.S., Evidence, § 1025.

It must be conceded that information acquired by a witness from others relating to the time he had worked, the nature of the work done, salary received, etc. in a broad sense will be termed hearsay; but the established rule in this state requiring that the statutory provisions of the Workmen's Compensation Act shall be liberally construed so as to effectuate its known purpose, and applying the general rule as to the means of proving a negative, prompt the courts to relax the strict rule against hearsay evidence, since we can perceive of no more practical means of arriving at the truth of the fact sought to be established. In such circumstances our courts have held such testimony admissible and where not seriously contested, slight testimony is sufficient to raise a jury is-

sue and when found in the affirmative, as in this case, will support the verdict. Southern Underwriters v. Boswell, Tex. Civ.App., 141 S.W.2d 442, affirmed by the Supreme Court, 138 Tex. 255, 158 S.W.2d 280. In the cited case this court cited and declined to apply the general rule laid down in Traders & General Ins. Co. v. Rhodabarger, Tex.Civ.App., 93 S.W.2d 1180, writ dismissed.

We also note that certain parts of the testimony on this negative proof was admitted without objection on the part of carrier. In such instances a party waives objections made to other testimony of like kind. Culwell v. Shann, Tex.Civ. App., 184 S.W.2d 537, and cases cited, including Traders & General Ins. Co. v. Rhodabarger, supra. We hold that the testimony complained of was admissible, that it raised a jury issue requiring its submission and was sufficient to support the jury verdict. This being true, of course no summary instruction for the carrier in this respect should have been given for the reason stated. Points 2 to 8 must be overruled.

Eighth point complains of the submission of special issue 3 for lack of sufficient evidence to support it and the affirmative answer thereto.

Special issue No. 3 reads: "Do you find from a preponderance of the evidence that the injuries, if any, sustained by plaintiff, Tom Locke, on or about the 21st day of May, 1948, i. e., the injuries inquired about in special issue No. 1, resulted in any total incapacity to the laborer?" The answer was "Yes."

Total incapacity was defined in the charge by a form often approved by the courts and no complaint is registered here as to the definition given.

Like other facts, total incapacity may be proved by circumstantial evidence and the circumstances may be derived by opinions of those in a competent position to give them. As a rule such opinions, to an extent, are dependent upon the circumstances and reasonable deductions made therefrom. In the last analysis the jury determines if the opinion of the witness

is a reasonable deduction. There was testimony by the claimant to the effect that he was strong and did his manual labor without pain or suffering before his injuries. That before assuming his duties with the employer he had a physical examination; that he received an injury to his back while performing his duties; that he told his employer about it and was sent to a doctor; that he stayed in bed a few days, went back to the job and tried to work; that his back was hurt so badly he could not work and had to quit; between that time and the date of trial he could do no heavy work, such as he had formerly done; that since his injuries he had done some supply night-watching, which required making the rounds and punching a clock each hour; that each round required about fifteen minutes; that his back gave him pain at all times but he could do such things as night-watching. The wife of claimant corroborated most of his statements. Other witnesses, some of whom were neighbors and others worked in the employer's business with claimant, told of his activities before the accident and his movements when he tried again to work, and described the marked difference in his movements during those periods. A doctor who attended claimant examined, treated him and made X-ray pictures and described the nature of claimant's injuries and his condition since the accident. The doctor gave it as his opinion that claimant "was unable to do any kind of laboring work, that is continuously and with safety to himself." The doctor later added that he thought that condition was permanent.

We are keeping in mind that special issue No. 3 only inquired if claimant suffered any total incapacity to labor. It could have been temporary or permanent, but no complaint here is lodged at subsequent issues inquiring as to its duration.

The carrier relies mainly upon the fact that claimant did night-watch work subsequent to the injury to disprove that he suffered any total incapacity to labor. Cases are so numerous holding against such contention they must be well known to every court and practicing attorney.

In this case the application of the often quoted rule is sufficient answer as to whether or not there is evidence to support the answer to special issue 3; that rule, in substance, is that if discarding all evidence to the contrary and giving credit to all testimony favorable to a verdict a jury might have found, as this one did, the evidence warrants the submission of the issue and supports its answer. 17 Tex. Jur., p. 910, sec. 410; Vol. 4, Texas Jurisprudence 10 Year Supplement, p. 701, sec. 410; Texas & N. O. R. Co. v. Brannen, 140 Tex. 52, 166 S.W.2d 112.

The carrier's brief discusses at length rules and decisions applicable to total and permanent incapacity to do physical labor, and claimant's counsel in turn has replied, but "permanent" incapacity is not raised by the point of error before us and we need not discuss it.

We conclude that there is no reversible error presented by this record; we therefore overrule all points of assigned error and order that the judgment of the trial court be affirmed.

Affirmed.