**TEXAS EMPLOYERS' INSURANCE ASSOCIATION, Appellant,**

v.

**C. M. SHIRLEY, Appellee.**

No. 5474.

Court of Civil Appeals of Texas.

El Paso.

Sept. 27, 1961.

Rehearing Denied Oct. 18, 1961.

McDonald, Shafer & Gilliland, Odessa, for appellant.

Warren Burnett, Odessa, for appellee.

CLAYTON, Justice.

This is a workmen's compensation case in which Texas Employers Insurance Association appeals from a judgment of the District Court of Ector County, Texas, awarding C. M. Shirley, a welder, total and permanent disability. The case was submitted to the jury under the provisions of subsection 2 of Section 1, Article 8309, Vernon's Ann. Revised Civil Statutes of Texas. Appellant complains of the action of the trial court in submitting the case to the jury under this subsection, and of computing judgment on the basis of the jury's finding thereunder.

The subsection provides a method of determining average weekly wages of appellee by finding the average weekly wages of an employee of the same class, working substantially the whole of the year immediately preceding the injury to appellee, in the same or similar employment as appellee in the same or neighboring place. This method of determining average weekly wages can be resorted to only after the employee has shown that such wages cannot be computed under subsection 1 of the statute. Texas Employers' Ins. Ass'n v. Locke, Tex.Civ.App., 224 S.W.2d 755. In order to make this showing, the employee must prove that he had not worked in the employment in which he was working at the time of his injury, whether for the same employer or not, substantially the whole year preceding his injury. Since the statute fixes average annual wages as 300 times the average daily wage earned by the employee, "substantially" 300 days have been established as constituting "substantially" a whole year. Petroleum Casualty Co. v. Williams, Tex. Com.App., 15 S.W.2d 553; Texas Employers' Ins. Ass'n v. McKay, Tex.Civ.App., 205 S.W.2d 833.

The appellee was injured on March 26, 1959. During the preceding calendar year, beginning March 26, 1958, he had worked about eight months ("until November of '58") for W. M. Clayton, of the Well Service Company of Crane, and approximately six weeks for R. T. Mobley of M & M Mud Pumps, Inc., of Odessa, appellee's employer at the time of the injury.

In the interim between these two employments, the record shows, the appellee had "taken a contract building some trailers at Lovington" which took "four or five weeks", as nearly as appellee could remember. The record is silent as to whether or not appellee was self-employed during these four or five weeks, but from the use of the words, "taken a contract", it must be assumed that he was self-employed, and therefore this period of time should not enter into the calculation of the preceding year's employment. Thus we have, at the outside, only about eight months, plus about six weeks, of employment during the calendar year preceding the injury. Neither of appellee's employers during this calendar year testified with any degree of certainty as to the exact length of employment of appellee; nor, apparently, could appellee himself supply this information.

From what has been said, and after a careful review of the entire record, we feel that it was impracticable to compute appellee's average weekly wages under the formula set out in subsection 1 of Section 1 of Article 8309.

On the other hand, we have in the record some very definite and unrefuted testimony relative to subsection 2 of Section 1 of this Article. The witness A. B. Wright was a welding contractor in Odessa. The pertinent portion of his testimony is here quoted:

"Q. Inviting your attention particularly to the twelve months period of time between the 26th of March of 1958 and the 26th of March of 1959, did you have any welders that worked for you as many as three hundred days in that twelve month period? A. I am sure I did.

"Q. That was here in this West Texas area? A. It might have been that they would go down to Pecos County and come back the next day, but they were working out of my yard * * *.

"Q. What was one of your employees who worked three hundred days during that twelve months, what would he average per week? A. Some weeks he would run fifty-two hours a week and another week he might run eighty-five * * *.

"Q. But on an average over the year it would be around one hundred and forty dollars a week? A. Yes, sir."

The witness further testified that appellee had worked for him probably two years previously, in Odessa, where appellee was subsquently injured, and that his work was satisfactory.

It is considered that this testimony placed the case squarely within the formula prescribed by subsection 2 of Section 1 of Article 8309, and that the trial judge correctly submitted an appropriate special issue to the jury on that basis. The jury found that there were one or more employees, of the same class as appellee, working substantially the whole of the year immediately preceding the date of appellee's injury, for the same or another employer, in the same or neighboring place, and that the average weekly wage of such other employee or employees was $125 per week. Appellee was averaging "in the neighborhood" of one hundred and fifty dollars a week at the time of his injury.

Finding no error in the manner in which this cause was submitted to the jury, appellant's first point is overruled.

In appellant's second point, it is urged that material jury misconduct occurred during deliberations that was injurious to appellant. This point was raised in appellant's amended motion for new trial, to which motion appellant attached an affidavit of juror William A. Richardson, which read:

"I was on the jury in the workmen's compensation case of C. M. Shirley vs. Texas Employers' Insurance Association tried in Judge Milburn's Court.

While the jury was deliberating and while I was holding out against voting for total and permanent disability, and while the jury was arguing those issues, another juror stated to me that Attorney Burnett had instructed us that we were supposed to give the benefit of a doubt to the plaintiff Shirley."

The statement attributed to Attorney Burnett, appellee's attorney, was made in closing argument, and is set out in the transcript as follows:

"Mr. Burnett: In this case the fact that he (appellee) has tried to work on four occasions and has been able to work for as high as two weeks and in one instance perhaps as much as three weeks, is that reason for you to say that he is not totally disabled and not entitled to recover under this insurance policy that Texas Employers' Insurance Association has accepted the premiums on and wrote.

"My friends, if there is anything I would resolve the doubt in favor of an old boy who has tried."

In the hearing on motion for new trial, the juror was asked, and answered, the following questions by appellant's counsel:

"Q. What was said to you, Mr. Richardson? A. One of the jurors reminded me that in Mr. Burnett's argument he had stated that if there was a benefit of the doubt we should give it to Mr. Shirley.

"Q. At that stage whenever the juror said that to you what was the jury deliberating upon, what were they discussing with respect to the Charge? A. Well, we were down to a question which read in effect whether Mr. Shirley was permanent, I believe it was temporary or permanent disability * *.

"Q. At the time you were deliberating upon that issue did you at that time or any other time remember that a statement bearing upon benefit of the doubt had been made to you by Mr. Burnett in his argument to the jury? A. Words to that effect, yes.

"Q. What I mean is, did you remember it? A. I remembered it.

"Q. Now, at that time that this statement was made to you by the other juror had you at that time voted to answer one of the Special Issues to the effect that the disability, total disability was permanent, had you at that time yet voted in favor of answering that issue as permanent? A. Oh, no, that is what we were arguing about.

"Q. And I ask you this final question. At some time later did you agree to answer that issue 'Yes' or in other words, that it was permanent? A. I did."

The juror, on cross-examination, testified further:

"Q. As a juror in this case you were sworn to follow the law that Judge Milburn gave you in his Charge? A. Yes.

"Q. Didn't you tell me a while ago that as a juror you did that? A. Yes.
* * *.

"Q. Didn't you tell me that you did answer the questions from the evidence? A. Yes."

It was further brought out that the jury had begun deliberations about 3:30 one afternoon, and continued to deliberate almost without interruption until around midnight that night. The reminder about the argument of appellee's attorney, Burnett, was not made by the foreman of the jury, or any other person in authority. The deliberations of the jury covered an appreciable period of time, and it was not brought out just when the jury agreed upon the issue of permanent disability. There was sufficient evidence at the trial, and from appellant's doctor, to justify a finding that appellee's injury was permanent. It is a

reasonable inference that the juror Richardson arrived at his own conclusions as to the permanency of appellee's injury, independent of anything that might have been said in argument, or any reminder of such argument in the jury room. We are aware of the line of authorities that hold that neither a juror's disavowal of influence nor his admission of influence derived from misconduct is a proper inquiry. Texas Employers' Ins. Ass'n v. McCaslin, 159 Tex. 273, 317 S.W.2d 916, and cases therein cited. But we feel that there is not a sufficient showing here from the testimony on motion for a new trial, or from the record as a whole, to show "probable prejudice" under Rule 327, Texas Rules of Civil Procedure, or that the trial was so materially unfair as to warrant a reversal of the judgment. Texas Employers' Ins. Ass'n v. McCaslin, supra.

The judgment of the trial court is affirmed.